2012 OK 88

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Michelle Renee ROWE, Respondent.**

**Nos. SCBD–5879, OBAD–1912.**

Supreme Court of Oklahoma.

Oct. 23, 2012.

536

Gina L. Hendryx and Tommy Humphries, Office of the General Counsel, Oklahoma Bar Association, for the complainant.

No appearance by the respondent.

EDMONDSON, J.

¶1 On April 26, 2012, the Oklahoma Bar Association (OBA) filed a formal complaint against Michelle Renee Rowe (Respondent), OBA No. 20106, pursuant to Rule 6 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2011, Ch. 1, App. 1–A, setting forth eight (8) counts of professional misconduct in violation of Rules 1.1, 1.3, 1.4, 1.5, 1.15, 1.16(d), 3.4(c), 8.1(b) and 8.4(a)and (c) of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2011, Ch. 1, App. 3–A, as well as Rules 1.3 and 5.2 of the RGDP, that warrant the imposition of professional discipline. The OBA alleges the following facts in support of Counts I–VIII of the complaint.

### COUNT I—THE WENDELL AND CERCIA SHIRLEY GRIEVANCE

¶2 Wendell and Cercia Shirley hired the respondent to represent them in the filing of a joint Chapter 7 bankruptcy petition on July 31, 2009, at which time they paid the respondent $1,000 in cash. They made additional cash payments of $300 on September 1, 2009, and $499 on September 29, 2009. These payments were not deposited into the respondent's trust account. The respondent deposited some of the cash payments into her operating account and used the commingled funds for personal expenses and thereby either converted or misappropriated client funds.

¶3 More than a year passed and the respondent had not filed Mr. and Mrs. Shirley's petition for bankruptcy. The respondent

told Mr. and Mrs. Shirley that she tried to file the bankruptcy, but it was turned down by the bankruptcy trustee. She said that problems with her computer kept her from filing in a timely manner after that. The respondent failed to act with reasonable competence and diligence, to the detriment of her clients. She engaged in conduct involving misrepresentation to her clients. Her fee was unreasonable because she did not perform the work for which she collected a fee. She did not refund their money.

¶ 4 On November 1, 2010, Mr. and Mrs. Shirley filed a grievance against the respondent with the OBA. The formal investigation was commenced on November 22, 2010, and the General Counsel's office twice sent notices notifying the respondent of her duty to respond. On April 6, 2011, an alias subpoena was served upon Respondent to appear and bring her files and bank records for a deposition on April 18, 2011. The respondent appeared on that date for her deposition, but failed to bring her bank records. She stated that she had responded to the grievance by E-mail and regular mail, and would provide proof of mailing, but she did not do so. The respondent's actions constitute professional misconduct in violation Rules 1.1, 1.3, 1.4, 1.5, 1.15, 8.1(b) and 8.4(a) and (c) of the ORPC and Rules 1.3 and 5.2 of the RGDP.

### COUNT II—THE JEANNE MITRI GRIEVANCE

¶ 5 On August 4, 2009, Jeanne Mitri hired the respondent to represent her in filing for Chapter 7 bankruptcy. Ms. Mitri paid the respondent $299 for filing fees and made additional payments to respondent for a total of $1,200. The respondent deposited the client's payments into her operating account instead of her trust account, thereby commingling client funds with her own. She has used the commingled funds for personal expenses and thereby either converted or misappropriated client funds. More than a year passed and the respondent had not filed the petition for bankruptcy. She told Ms. Mitri that she needed additional paperwork or that her computer was not working. Later, she told Ms. Mitri that she had filed her petition, but that a particular section was not accept-

ed. The respondent failed to act with reasonable competence and diligence, to the detriment of her client. She engaged in conduct involving misrepresentation to her client. She collected an unreasonable fee because she did not perform the work for which she collected the fee nor has she refunded any of the money.

¶ 6 Ms. Mitri filed a grievance with the OBA and on January 6, 2011, the General Counsel opened the matter for formal investigation. The respondent did not respond to the first and second notices, so was served by alias subpoena to appear with files and bank records for a deposition on April 18, 2011. The respondent appeared for deposition on April 18, 2011, but did not bring the requested bank records. She stated that she had mailed and E-mailed her responses to the grievance and could prove so by producing a postage receipt. To date, no postage receipt or other evidence of mailing has been produced. The respondent's actions constitute professional misconduct in violation of Rules 1.1, 1.3, 1.4, 1.5, 1.15, 8.1(b) and 8.4(a) and (c) of the ORPC and Rules 1.3 and 5.2 of the RGDP.

### COUNT III—THE BARNETT GRIEVANCE

¶ 7 Shineko Barnett hired the respondent on June 24, 2010, to represent her in a pending divorce proceeding in the District Court of Oklahoma County. She paid a retainer of $1,000, which the respondent deposited into her operating account instead of her trust account. She commingled client funds with her own and used the commingled funds for personal expenses, thereby either converting or misappropriating client funds. Count III alleges that the respondent's actions constitute professional misconduct in violation of Rules 1.15 and 8.4(a), ORPC, and Rule 1.3, RGDP, and warrant the imposition of professional discipline.

### COUNT IV—THE MAGGIA GRIEVANCE

¶ 8 On May 21, 2010, Toni Maggia hired the respondent to represent her in a civil matter in Osage County, Oklahoma. Ms. Maggia wanted to remove personal property

belonging to her ex-fiancé from her real property and she paid $1,500 by check to the respondent as a retainer. The respondent deposited Ms. Maggia's check in her operating account, not her trust account. No deposits were made into the respondent's trust account between July 1, 2009, and July 29, 2011. The respondent never filed the action on behalf of Ms. Maggia and, despite a request in writing from Ms. Maggia, never provided her with a detailed billing statement.

¶ 9 The respondent failed to adequately communicate with her client; further she engaged in conduct involving misrepresentation to her client by telling her that the mail system and her ex-fiancé were to blame for her not receiving legal documents from the respondent. The respondent collected an unreasonable fee from the client in that she did not perform the work nor did she refund any of the money paid. The respondent's actions constitute professional misconduct in violation of Rules 1.1, 1.3, 1.4, 1.5, 1.15 and 8.4(a) and (c), ORPC, and Rule 1.3, RGDP, and warrant the imposition of professional discipline.[1]

### COUNT V—THE REMINGTON GRIEVANCE

¶ 10 The respondent was hired by Christopher Remington in July of 2008 to represent him in a divorce matter. On November 13, 2009, the parties attended mediation and reached a settlement. The court ordered the respondent to draft the decree. The respondent obtained a payment of $500 from Mr. Remington to prepare and file the decree. She never prepared the decree and did not return the fee paid. Mr. Remington obtained new counsel and requested that his new counsel, Rees Evans, be given access to his file. Mr. Evans made several attempts to contact the respondent but was unable to reach her. He was forced to file a replevin action on October 6, 2011, to recover Mr. Remington's file. The respondent failed to appear and default judgment was entered against her. She refuses to communicate with Mr. Evans or comply with the replevin order.

¶ 11 The respondent did not place Mr. Remington's payment into her trust account, but rather in her operating account, thereby commingling client funds with her own. She used the commingled funds for personal expenses, thereby either converting or misappropriating client funds. On November 18, 2011, the General Counsel opened the Remington grievance for formal investigation and twice notified the respondent of her duty to respond, but there was no response. Additional certified mailings sent the respondent at her address listed on the OBA roster have been returned as "unclaimed." The respondent's actions constitute professional misconduct in violation of Rules 1.1, 1.3, 1.4, 1.5, 1.15, 1.16(d), 3.4(c), 8.1(b) and 8.4(a), ORPC, and Rules 1.3 and 5.2, RGDP, thus warranting the imposition of professional discipline.

### COUNT VI—THE SEGER GRIEVANCE

¶ 12 Christian Seger hired the respondent on September 2, 2010, to represent him in a child custody matter. After the matter was settled in court on February 27, 2011, Mr. Seger discovered that the child support calculations in the court minute were incorrect. Mr. Seger paid the respondent $500 to prepare and file a journal entry memorializing the correct child support. To date, the respondent has failed to do so and has not returned the fee. Despite many requests for an itemized billing statement, Mr. Seger never received one. The respondent abandoned her law office, leaving him with no way to contact her.

¶ 13 The respondent deposited his payment into her operating account instead of her trust account, thereby commingling client funds with her own. She used the commingled funds for personal expenses, thereby either converting or misappropriating client funds. The General Counsel opened the Seger grievance for formal investigation on November 18, 2011. Ms. Rowe did not respond, despite being sent two notices of

---

1. At Ms. Rowe's deposition, the complainant hand-delivered the Barnett and Maggia grievances to the respondent. The respondent hand-delivered responses to those grievances to the OBA. Tr. of Discipline Hearing, p. 21.

her duty to respond. Additional certified mailings sent to the respondent at the address on the her OBA roster were returned as "unclaimed." Count VI alleges that the respondent's actions constitute professional misconduct in violation of Rules 1.1, 1.3, 1.4, 1.5, 1.15, 8.1(b) and 8.4(a), ORPC, and Rules 1.3 and 5.2, RGDP, and warrant the imposition of professional discipline.

### COUNT VII—THE PORTER GRIEVANCE

¶ 14 Jennifer Porter hired the respondent in July of 2008 to represent her in a divorce action. The respondent was paid a total of $57,320. She refused to provide a time and expense accounting and has never provided a written billing statement to Ms. Porter. She placed the client's payments into her operating account instead of her trust account, thereby commingling client funds with her own. She used the commingled funds for personal expenses and thereby either converted or misappropriated client funds. The fee charged to the client was excessive, unreasonable and fraudulent.

¶ 15 During the representation, Ms. Porter hired the respondent to handle a wage garnishment matter. The respondent neglected the matter, which resulted in a 25% garnishment entered against Ms. Porter. The respondent was terminated from representing Ms. Porter on July 5, 2011. She refused to release the client files to Ms. Porter's new counsel without further payment of funds. Although the files contained original documents that were needed by Ms. Porter's new counsel in order to continue the representation, the respondent refused to turn them over.

¶ 16 The General Counsel's office opened the Porter grievance for formal investigation on February 15, 2012, and notified the respondent of her duty to respond within twenty (20) days. When she failed to respond, the General Counsel's office sent a second notice requesting a response within five (5) days. There was no response. Additional certified mailings sent to the respondent at her roster address have been returned as "unclaimed." Count VII alleges that the respondent's actions constitute professional

misconduct in violation of Rules 1.1, 1.3, 1.4, 1.5, 1.15, 1.16(d), 8.1(b) and 8.4(a), ORPC, and Rules 1.3 and 5.2, RGDP, thus warranting the imposition of professional discipline.

### COUNT VIII—NEGLECT OF FIDUCIARY DUTY

¶ 17 Count VIII incorporated Counts I–VII and alleged that the respondent did not regularly produce time and expense records or billing statements. She had no accounting system or office policies in place that would allow her to properly review her financial information and control expenditures and deposits. She did not use her IOLTA trust account and habitually deposited client funds into her operating account from which she made cash withdrawals and paid for personal expenses. The OBA alleges that as a result of her intentional actions as well as her negligence, the respondent violated her fiduciary duty to her clients, thereby constituting professional misconduct in violation of Rules. 1.15 and 8.4, ORPC, and Rule 1.3, RGDP, which warrants the imposition of professional discipline.

¶ 18 Because the respondent did not file an answer or otherwise respond to the complaint as required by Rule 6.4, RGDP, the OBA filed a motion to deem the allegations of the complaint admitted. Rule 6.4 provides that if the respondent fails to answer the complaint, the charges shall be deemed admitted except that evidence shall be submitted for the purpose of determining the discipline to be imposed. A trial panel of the Professional Responsibility Tribunal (PRT) conducted a hearing on June 19, 2012, at which the respondent failed to appear despite having been notified. The motion to deem allegations of the complaint admitted was granted. The complainant supplied evidence that the respondent had been properly served with notice of the charges against her. The OBA investigator testified, as did Cercia Shirley, Christopher Michael Remington, Jeanne Mitri and Christian Seger, in support of the allegations against the respondent. Following the hearing, the PRT filed a report with this Court recommending that the respondent be suspended from the practice of law for two years and one day. In its brief-

in-chief to this Court the complainant maintained that suspension ranging from more than two years up to disbarment would be the appropriate level of discipline for the respondent's professional misconduct. The respondent did not file a brief with this Court.

### STANDARD OF REVIEW

¶ 19 In bar disciplinary proceedings, this Court exercises exclusive original jurisdiction as a licensing court, not as a reviewing tribunal. *State ex rel. Oklahoma Bar Ass'n v. Berger,* 2008 OK 91 ¶ 12, 202 P.3d 822. It is the responsibility of this Court to examine the record and assess the credibility and weight of the evidence in order to determine whether it clearly and convincingly establishes professional misconduct by the respondent and, if so, what the appropriate discipline, if any, should be. *State ex*

*rel. Oklahoma Bar Ass'n v. Stutsman,* 1999 OK 62, 990 P.2d 854, 858. Our review is *de novo* and we are not bound by the recommendations of the PRT. *State ex rel. Oklahoma Bar Ass'n v. Todd,* 1992 OK 81, 833 P.2d 260, 261.

¶ 20 The record is sufficient for our de novo review. The OBA investigator testified, as did four of the seven clients who filed grievances, about the allegations in the complaint and thirty-four (34) exhibits were admitted as evidence. The PRT made findings of fact as set out in the complaint. The PRT concluded that respondent's actions constitute professional misconduct in violation of Rules 1.1, 1.3, 1.4, 1.5, 1.15, 1.16, 8.1(b) and 8.4(a)(c)(d), ORPC,[2] and Rules 1.3 and 5.2, RGDP,[3] and warrant the imposition of professional discipline.

¶ 21 The respondent was given due and ample notice of the proceedings and charges

---

**2.** Rule 1.1, ORPC, provides that a lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation; Rule 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client; Rule 1.4 provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information, and that a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation; Rule 1.5 provides that a lawyer shall not make an agreement for, charge or collect an unreasonable fee or unreasonable amount for expenses; Rule 1.15, ORPC, provides:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyers own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is enti-

tled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.
Rule 1.16 is concerned with a lawyer declining or terminating representation of a client; in particular, subsection (d) provides that upon termination of representation the lawyer shall take steps to protect a client's interests, such as giving reasonable notice to the client, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expenses that has not been earned or incurred; Rule 8.1(b), ORPC, provides that in a disciplinary matter, a lawyer should not knowingly fail to respond to a lawful demand for information from a disciplinary authority. Rule 8.4 provides that it is professional misconduct for a lawyer to (a) violate or attempt to violate the Rules of Professional Conduct … (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; or (d) engage in conduct that is prejudicial to the administration of justice.

**3.** Rule 1.3, RGDP, states that the commission by any lawyer of any act contrary to prescribed standards of conduct shall be grounds for disciplinary action. Rule 5.2 states that the failure of a lawyer to respond as provided by the rule, shall be grounds for discipline.

against her but she did not answer or appear to present a defense. When the respondent appeared for a deposition on April 18, 2011, she failed to bring the subpoenaed bank records. She claimed that she had postage receipts to prove that she responded to the Shirley and Mitri grievances, but she never produced that evidence.

¶ 22 We have reviewed the testimony and the evidence and find that the facts deemed admitted under Rule 6.4 support the findings made by the PRT: that the respondent failed to provide competent representation and act with reasonable diligence in representing her clients; she failed to keep them reasonably informed and actively misled them about the status of their cases; she deposited client's fees into her operating account instead of her client trust account and wrote personal checks from her operating account, in violation of Rule 1.15; she failed to timely and adequately respond to the grievances or to answer the formal complaint filed against her. The respondent failed to provide materials requested by the complainant, in spite of promising to do so. The respondent's conduct violates Rules 1.1, 1.3, 1.4, 8.1(b), 1.15, 1.16 and 8.4(a)(c)(d), ORPC, and Rules 1.3 and 5.2, RGDP.

### DISCIPLINE

¶ 23 Violation of the Oklahoma Rules of Professional Conduct and Rules Governing Disciplinary Procedure warrants the imposition of professional discipline. It is the duty of this Court to determine the appropriate level of discipline to be imposed, based on the facts and circumstances of the case. In determining the appropriate discipline in a particular matter, we look to the level of discipline imposed in similar cases of professional misconduct.

¶ 24 In *Oklahoma Bar Ass'n v. Phillips*, 1990 OK 4, 786 P.2d 1242, this Court imposed a three-year suspension from the practice of law for neglect of a legal matter, failure to answer the grievance and failure to respond to a lawful demand from disciplinary authorities. Phillips had accepted a fee for commencing a probate matter but he did not file the probate. After repeated attempts by the client to contact him, Phillips indicated that he had been in a jury trial and that he had been unable to start the probate until recently. Phillips had not initiated the probate. Phillips had not been disciplined previously, but he stood suspended from the OBA for nonpayment of dues and for failure to comply with MCLE requirements. When Phillips failed to answer the complaint against him, the charges were deemed admitted pursuant to Rule 6.4. The sole witness testifying at the hearing was the investigator for the OBA. The trial panel recommended that Phillips be disbarred. In imposing a lesser discipline the Court stated that:

> "The essence of the charge in Count I is neglect of one legal matter in addition to one misrepresentation. We believe that for such misconduct, and his failure to respond in the disciplinary process, a three year suspension is appropriate." 786 P.2d at 1246.

¶ 25 In *State ex rel. OBA v. Bellamy*, 2012 OK 20, 273 P.3d 56, Bellamy stood charged with three counts of misconduct concerning neglect of client matters and failure to respond to the grievances. There was clear and convincing evidence that Bellamy took his clients' money and then failed to properly represent them. He abandoned their cases and failed to return their original documents so they could pursue other remedies. We suspended Bellamy for two years and one day.

¶ 26 In *State ex rel. OBA v. Whitebook*, 2010 OK 72, 242 P.3d 517, we suspended the attorney for two years and one day based upon allegations that were deemed admitted when Whitebook failed to respond to the complaint. He stood charged with failure to diligently represent two clients who retained him to file probate proceedings. In the first, he took a fee and initially performed some work, but ceased further work and the client was unable to communicate with him. That client was forced to retain other counsel, at considerable expense. Whitebook did not refund the unearned portion of the retainer. In the second matter, the client paid a fee of $800, but Whitebook did not take any action on the probate. The client was unable to communicate with him and Whitebook never performed any services for the client. The

client requested refund of the retainer but Whitebook did not return it. He did not appear at the hearing before the PRT or file a brief with this Court.

¶ 27 In *State ex rel. OBA v. Passmore*, 2011 OK 90, 264 P.3d 1238, the respondent was charged with six counts of misconduct including failure to represent clients and discontinuing all contact with them. He failed to respond to the grievances filed by those clients, failed to appear at a deposition before the OBA after being subpoenaed and failed to appear at the PRT hearing, despite being properly served with notice. The allegations of the complaint, which were deemed admitted, reflected a pattern of abandoning clients during his representation of them and not returning their files when requested. In two of the matters he filed the cases, but then could not be contacted and the cases were dismissed as a result of his failure to prosecute. There were no allegations of trust account violations or commingling of client funds. We disbarred Passmore, in spite of the PRT recommendation of suspension for two years and one day.

¶ 28 The respondent, Michelle Renee Rowe, was admitted to the bar in 2004 and has not been previously disciplined. The discipline imposed in similar circumstances has ranged from suspension for two years and one day up to disbarment. The severity of Ms. Rowe's conduct and the number of clients affected warrants the severest discipline of disbarment. Her clients suffered because of her failure to do the work for which she was paid and her refusal to return their files. She did not return any of the money paid to her by these clients. Mrs. Shirley testified that as a result of the respondent's failure to file their bankruptcy petition, they were sued by Midland Corporation and a garnishment was executed. The Shirleys obtained a judgment against the respondent to recover their fees and costs, but they have been unable to collect on the judgment. Jeanne Mitri was forced to spend another $1,500 to hire new counsel to get her bankruptcy filed. She also obtained a judgment against the respondent, but has not been able to collect on the judgment.

¶ 29 Christopher Michael Remington, the client in Count V, testified by video conference from his military posting. Mr. Remington needed the final decree of divorce because the military would not remove his ex-wife from his personnel records without it. His military pay was based on the number of his dependents and the number of dependents affected the amounts withheld from his paycheck. He was forced to hire new counsel, who was forced to file a replevin action against the respondent in an attempt to recover his files in order to finalize his divorce proceedings. The respondent's last appearance in Mr. Remington's divorce case was in November 2009; his personnel records were finally corrected in the spring of 2012. Christian Seger, the client in Count VI, testified that his case is still pending and he is still paying the incorrect higher child support rate that he paid the respondent to correct. She improperly calculated the child support payments, but did nothing to correct them.

¶ 30 The investigator for the OBA, Dorothy Walos, testified in support of the allegations in Count VIII. The respondent had a trust account, but for at least two years previous, the monthly balance was approximately $3.00. Both the trust and the operating accounts were at the same bank and have since been closed.

¶ 31 The respondent's conduct indicates a disregard of and indifference to her clients, to her law practice, to the rules of this Court and to the disciplinary process. The respondent did not attempt to defend her license to practice law before this Court. She was aware of the charges against her and of the discipline recommended by the PRT. She did not respond to the complaint filed against her or appear at the hearing in order to plead or prove any matters in mitigation or to ask for leniency from this Court. We find that the respondent should be disbarred. She may not apply for readmission for five (5) years and she will be required to take affirmative action to recover her license through the reinstatement process. The reinstatement procedure requires the OBA to investigate the respondent's personal and business activities, to determine whether she has complied with conditions for reinstate-

ment, and to ascertain whether she is fit to resume the practice of law. The respondent is also required to comply with Rule 9.1, RGDP, and notify her clients of her disbarment.[4]

## APPLICATION TO ASSESS COSTS

¶ 32 On July 19, 2012, the complainant filed its application to assess costs against the respondent in the amount of $870.35, pursuant to Rule 6.16, RGDP. The complainant's motion to assess costs against the respondent is granted and respondent is directed to pay the costs of the proceeding in the amount of $870.35 within ninety (90) days after this opinion becomes final.

## RESPONDENT DISBARRED AND CHARGED WITH COSTS.

¶ 33 ALL JUSTICES CONCUR.

---

4. Rule 9.1 Notice to Clients; List of Other Bars to Which Admitted

When the action of the Supreme Court becomes final, a lawyer who is disbarred or suspended ... must notify all of the lawyer's clients having legal business then pending within twenty (20) days, by certified mail, of the lawyer's inability to represent them and the necessity for promptly retaining new counsel ... The lawyer must file, within twenty (20) days, an affidavit with the Commission and with the Clerk of the Supreme Court stating that the lawyer has complied with the provisions of this Rule, together with a list of the clients so notified and a list of all other State and Federal courts and administrative agencies before which the lawyer is admitted to practice. Proof of substantial compliance by the lawyer with Rule 9.1 shall be a condition precedent to any petition for reinstatement.