OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SCOTT

 

 
 

 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SCOTT
2022 OK 1
Case Number: SCBD-7035
Decided: 01/11/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 1, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

Â 

Â 

STATE OF OKLAHOMA ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,
v.
ROBERT CARLYLE SCOTT, Respondent.

BAR DISCIPLINARY PROCEEDING

Â¶0 Complainant, State of Oklahoma ex rel. Oklahoma Bar Association, charged Respondent, Robert Carlyle Scott, with two counts of professional misconduct including failure to diligently represent his clients, failure to communicate, failure to respond to a lawful demand for information from a disciplinary authority, commission of an act contrary to prescribed standards of conduct, and failure to timely respond to a grievance. The Trial Panel recommended that Respondent be suspended for two years and one day. We hold there is clear and convincing evidence that the totality of Respondent's conduct warrants disbarment. Respondent is ordered to pay the costs as herein provided within ninety days after this opinion becomes final.

RESPONDENT DISBARRED AND ORDERED TO PAY COSTS

Peter Haddock, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Robert Carlyle Scott, Oklahoma City, Oklahoma, Respondent/Pro se.

ROWE, J.:

Â¶1 Complainant, State of Oklahoma ex rel. Oklahoma Bar Association initiated disciplinary proceedings pursuant to Rule 6, Rules Governing Disciplinary Proceedings ("RGDP"), 5 O.S.2011 ch. 1, app. 1-A, alleging two counts of professional misconduct against Respondent, Robert Carlyle Scott. Respondent is a member of the Oklahoma Bar Association, not currently in good standing. His license to practice law is presently suspended for failure to pay dues and failure to comply with the rules for Mandatory Continuing Legal Education. Complainant's allegations arise in part from Respondent's failure to provide an account for the use of funds belonging to two clients and subsequent neglect of said clients. Complainant alleges Respondent's actions are in violation of the Oklahoma Rules of Professional Conduct ("ORPC"), 5 O.S.2011 ch. 1, app. 3-A, and the RGDP and are cause for professional discipline.

I. Procedural History

Â¶2 Complainant filed its formal Complaint with the Office of the Chief Justice on March 15, 2021, which contained two counts of alleged misconduct relating to Respondent's failure to provide an account for the use of funds belonging to two clients and subsequent abandonment of said clients. That same day, Complainant mailed copies of the Complaint via certified mail to Respondent at his official roster address, his last known office address, and his last known post office box. All three mailings were returned undelivered. On March 23, 2021, Complainant hired a private process server to attempt service of the Complaint on Respondent. The process server made three separate attempts to serve Respondent, with no success. On April 21, 2021, Complainant filed a Proof of Attempted Service of Rule 6 Complaint, detailing its effort to effect service on Respondent.

Â¶3 On June 28, 2021, the Chief Master of the Professional Responsibility Tribunal appointed a three-member Trial Panel and set the matter for hearing on August 12, 2021. The combined Appointment of Trial Panel Members and Notice of Hearing was sent to Respondent at his official roster address, his last known office address, and his last known post office box. On August 2, 2021, in light of Respondent's failure to file an answer to the Complaint, Complainant filed a Motion to Deem Allegations Admitted, pursuant to Rule 6.4, RGDP. On August 12, 2021, the Trial Panel held a hearing on the allegations contained in the Complaint, pursuant to Rule 6, RGDP. Respondent failed to appear at the hearing. During the hearing, the Trial Panel granted Complainant's Motion to Deem Allegations Admitted. On August 19, 2021, Complainant filed Proposed Findings of Fact and Conclusions of Law.

Â¶4 On September 10, 2021, the Trial Panel filed its report wherein it found that Complainant had established by clear and convincing evidence that Respondent violated Rules 1.3, 1.4, 8.1(b), 8.4(a), ORPC, and Rules 1.3 and 5.2, RGDP. The Trial Panel unanimously recommended that Respondent be suspended for a period of two years and one day.

II. Due Process

Â¶5 Respondent's failure to respond to the Complaint and failure to appear at the hearing before the Trial Panel raise questions as to whether he received sufficient notice of these disciplinary proceedings. Rule 6.3, RGDP, sets out the notice requirements following the filing of a Complaint:

At the direction of the Chief Justice, the Clerk shall immediately notify the Chief Master of the Professional Responsibility Tribunal, the President of the Oklahoma Bar Association and the respondent of the filing of a formal complaint. Such notification shall include a copy of the complaint and shall be by regular mail, except that the notice to the respondent shall be sent by certified mail to the respondent's last known address.

Attached to Complainant's Proof of Attempted Service of Rule 6 Complaint are copies of three certified mailings sent to Respondent at his official roster address, his last known office address, and his last known post office box. All three mailings were returned undelivered. Complainant also attached an invoice from the process server, indicating he made three separate, unsuccessful attempts to serve Respondent with the Complaint at his home in Roland, Oklahoma. Based on the foregoing, we find that Complainant has more than satisfied its obligation to notify Respondent of the filing of the Complaint under Rule 6.3, RGDP.

Â¶6 Rule 6.7, RGDP, requires the Chief Master of the Professional Responsibility Tribunal to notify a respondent of the appointment and membership of the Trial Panel, as well as the time and place for the hearing.[1] Notably, Rule 6.7 does not require that the notice be sent certified mail. The Certificate of Service attached to the Appointment of Trial Panel Members and Notice of Hearing reflects that it was sent to Respondent at his official roster address, his last known office address, and his last known post office box. Thus, we find that Complainant has met its obligation to notify Respondent of the appointment of the Trial Panel and his hearing date in accordance with Rule 6.7, RGDP. Since Complainant has met all its obligations to notify Respondent of these proceedings, we may proceed with consideration of the alleged misconduct.

III. Standard of Review

Â¶7 This Court possesses exclusive jurisdiction in Bar Association disciplinary proceedings. State ex rel. Okla. Bar Ass'n v. Holden, 1995 OK 25, Â¶10, 895 P.2d 707, 711. We review the evidence de novo to determine whether the allegations of misconduct have been established by clear and convincing evidence. Rule 6.12(c), RGDP; State ex rel. Okla. Bar Ass'n v. Bolusky, 2001 OK 26, Â¶7, 23 P.3d 268, 272. Clear and convincing evidence is "that measure or degree of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." State ex rel. Okla. Bar Ass'n v. Green, 1997 OK 39, Â¶5, 936 P.3d 947, 949.

Â¶8 Our goals in disciplinary proceedings are to protect the interests of the public and to preserve the integrity of the courts and the legal profession, not to punish attorneys. State ex rel. Okla. Bar Ass'n v. Kinsey, 2009 OK 31, Â¶15, 212 P.3d 1186, 1192. We consider the discipline previously imposed for similar professional misconduct to ensure that discipline is administered uniformly. Id. Â¶16, 212 P.3d at 1192 (citing State ex rel. Okla. Bar Ass'n v. Doris, 1999 OK 94, Â¶37, 991 P.2d 1015, 1025). Discipline, however, is decided on a case-by-case basis to account for differences in the offending conduct and mitigating circumstances. Id.

IV. Background

A. Count I: Tierney Grievance

Â¶9 On or about August 28, 2018, Matthew Peter Tierney and his wife, Shani Swarer, retained Respondent to assist them with setting up a medical marijuana business. During their initial meeting, Respondent had Tierney sign an Attorney Retainer Agreement. Pursuant to the terms of that agreement, Tierney paid Respondent a $5,000.00 retainer in the form of a check to cover fees and costs incurred during the representation.[2] The agreement also provided that upon conclusion of the representation, the balance of the retainer, if any, would be returned to the client.

Â¶10 On June 27, 2019, Swarer sent Respondent an email indicating that she and Tierney had decided to not pursue the medical marijuana business venture any further and requesting a refund of the unused retainer. Respondent did not reply to the email until July 22, 2019, at which point he indicated that he would review their file and remit the unused portion of the retainer that week. On August 19, 2019, Swarer sent Respondent another email indicating they had not received their refund. Respondent replied the next day, apologizing for the delay and promising to resolve the matter by the following Monday. Swarer sent another follow-up email the following Wednesday, August 28, 2019, because they still had not received any remittance. Respondent never replied to this message. Swarer sent two more follow-up emails on November 8, 2019, and November 24, 2019, requesting an account of how their funds were used and that any remaining portion be returned. On March 6, 2020, Swarer sent one final message to Respondent demanding an account and the return of any unused funds. Swarer also indicated that she had contacted the county bar association for advice on how to recover their money.

Â¶11 On May 8, 2020, Tierney filed a grievance with the Oklahoma Bar Association, alleging that Respondent failed to return any unused portion of their retainer, failed to render an account of how their funds were used, and stopped responding to their communications. On May 11, 2020, Complainant mailed Respondent a copy of Tierney's grievance along with a letter indicating Complainant had opened an informal investigation into these allegations. Complainant also requested that Respondent reach out to Tierney within two weeks to resolve the matter and that copies of any correspondence be forwarded to Complainant. On June 10, 2020, Complainant mailed Respondent a second letter indicating that it had not received any response to the original letter and requesting that one be provided within five working days.

Â¶12 On July 7, 2020, Complainant sent Respondent a third letter indicating that it had opened the matter for a formal investigation and that Respondent was required to respond to the allegations within twenty days pursuant to Rule 5.2, RGDP. Complainant specifically requested that Respondent address his alleged violation of Rules 1.4, 8.1(b), and 8.4(a), ORPC, and Rule 1.3, RGDP. On July 30, 2020, Complainant sent Respondent a fourth letter via certified mail requesting a response to Tierney's allegations within five days. Complainant advised Respondent that a failure to timely respond would warrant further action, including the issuance of a subpoena requiring his sworn testimony and production of records relevant to the allegations. The certified mailing was returned unclaimed.

Â¶13 On August 17, 2020, Les Arnold, Complainant's investigator, sent Respondent an email requesting that Respondent contact him immediately to discuss the pending investigation. Respondent failed to reply. On August 25, 2020, Arnold sent Respondent a second email summarizing the previous failed attempts Complainant made to contact him, and requesting an immediate response. Respondent again failed to reply. At some point thereafter, a subpoena duces tecum was issued pursuant to Rule 2.8, RGDP, directing Respondent to appear at the Oklahoma Bar Center on December 3, 2020, and give testimony and produce records relevant to the allegations in the Tierney grievance. Complainant hired a process server to serve the subpoena, but the attempts at service were unsuccessful.

B. Count II: Harper Grievance

Â¶14 Celia Harper retained Respondent to provide her with legal counsel and advice in establishing her medical marijuana dispensary. On August 26, 2019, Harper signed an Attorney Retainer Agreement and provided Respondent with a $5,000.00 retainer.[3] Harper's agreement also provided that the balance of her retainer, if any, would be returned to her upon the conclusion of the representation.

Â¶15 Harper testified that her initial meeting with Respondent, during which she executed the Attorney Retainer Agreement, lasted less than an hour. Aside from that initial meeting, Harper testified that she would see Respondent at meetings of his trade association and occasionally correspond with him through phone calls and text messages. At some point around October 2020, Respondent stopped responding to Harper's messages and requests for advice and information. On or around October 21, 2020, Harper sent Respondent a text message indicating that she was terminating his representation and planned to file a complaint with the Oklahoma Bar Association. After receiving no response to the text message, Harper followed up with an email later that day, confirming that she no longer wished to retain Respondent and asking that he refund the balance of her retainer.

Â¶16 On October 23, 2020, Harper filed a grievance with the Oklahoma Bar Association, alleging that Respondent failed to communicate with her and failed to render legal services that she requested. Harper attached screenshots of the unanswered text messages and emails as well as a copy of the Attorney Retainer Agreement she signed. On November 4, 2020, Complainant mailed Respondent a copy of Harper's grievance along with a letter indicating Complainant had opened a formal investigation into these allegations. Complainant directed Respondent to respond with twenty days pursuant to Rule 5.2, RGDP, and specifically requested that Respondent address his alleged violation of Rules 1.4, 8.1(b), and 8.4(a), ORPC, and Rule 1.3, RGDP. On December 3, 2020, having received no response to the first letter, Complainant mailed Respondent a second letter requesting a response to Harper's allegations within five days. Complainant advised Respondent that a failure to timely respond would warrant further action, including the issuance of a subpoena requiring his sworn testimony and production of records relevant to the allegations. Respondent again failed to reply.

V. Discussion

Â¶17 On both counts, Respondent stands accused of the same misconduct and violations of the ORPC and RGDP. Specifically, Complainant alleges that Respondent failed to diligently represent his clients, failed to communicate with his clients, failed to respond to a lawful demand for information from a disciplinary authority, and in doing so, violated Rules 1.3, 1.4, 8.1(b), 8.4(a), ORPC, and Rules 1.3 and 5.2, RGDP.

Â¶18 Rule 1.3, ORPC, requires that a lawyer act with reasonable diligence and promptness in representing a client.[4] Comment 2 to Rule 1.3 states, "A lawyer must also act with commitment and dedication to the interests of the client and zeal in advocacy on the client's behalf." The unanswered correspondence from both Swarer and Harper reflect Respondent's indifference to his clients' interests and neglect of his obligations to them. Swarer sent Respondent six emails between July 27, 2019, and March 6, 2020, asking that he refund the balance of her and Tierney's retainer. Respondent failed to respond to the last four messages and never refunded the balance of their retainer. Likewise, Harper testified that Respondent consistently failed to respond to her requests for legal advice and work as well as her demands that he return the balance of her retainer. Accordingly, we find by clear and convincing evidence that Respondent's conduct violated Rule 1.3, ORPC.

Â¶19 Rule 1.4 requires that a lawyer maintain communication with a client, including promptly complying with reasonable requests for information.[5] Swarer sent Respondent three emails between November 8, 2019, and March 6, 2020, requesting an accounting of how their retainer had been used. Respondent failed to respond to any of her requests. In so doing, Respondent failed to meet his obligations under Rule 1.4, ORPC.

Â¶20 Although Complainant did not raise the issue, we find that Respondent's conduct also implicates Rule 1.15, relating to a lawyer's duties in safekeeping client property. Specifically, Rule 1.15(d) requires that a lawyer promptly deliver to a client any funds or other property that the client is entitled to receive and, upon request by the client, render a full accounting regarding such property.[6] Swarer made numerous requests for Respondent to provide an account of how her and Tierney's retainer was used and to remit the balance. Even if Respondent was entitled to the full $5,000.00, he still had an obligation to provide Tierney and Swarer with an account of how it was used. His failure to do so amounts to a violation of Rule 1.15(d).

Â¶21 Rule 8.1(b), ORPC, prohibits a lawyer from failing to respond to a lawful demand for information from a disciplinary authority.[7] In instances when a lawyer has been the subject of a formal grievance, Rule 5.2, RGDP, requires that the lawyer provide a written response containing a full and fair disclosure of all the facts and circumstances relevant to the alleged misconduct within twenty days of receiving notice of the grievance.[8] Following the filing of the Tierney grievance, Complainant sent Respondent four letters and two emails over the course of more than three months, never receiving any response. After the Harper grievance was filed, Complainant sent Respondent two more letters over the course of one month and never received a response to either. Respondent's failure to respond to Complainant's numerous requests for information relevant to the Tierney and Harper grievances constitutes a violation of Rule 8.1(b), ORPC, and Rule 5.2, RGDP.

Â¶22 Rule 8.4(a), ORPC, prohibits a lawyer from violating or attempting to violate the Rules of Professional Conduct, knowingly assisting or inducing another to do so, or doing so through the acts of another.[9] Similarly, Rule 1.3, RGDP, prohibits a lawyer from engaging in acts contrary to prescribed standards of conduct and which bring discredit upon the legal profession.[10] To the extent that Respondent's conduct constitutes a violation of the aforementioned rules, it also constitutes a violation of Rule 8.4(a), ORPC, and Rule 1.3, RGDP.

Â¶23 Based on the foregoing, with respect to Counts I and II, we find that Complainant has established by clear and convincing evidence that Respondent engaged in misconduct in violation of Rules 1.3, 1.4, 1.15, 8.1, and 8.4, ORPC, and Rules 1.3 and 5.2, RGDP.

VI. Aggravating and Mitigating Circumstances

Â¶24 Respondent's failure to participate in the disciplinary proceedings to any extent has left us without any evidence to consider in mitigation. Respondent is not presently in good standing with the Oklahoma Bar Association. His license is currently suspended for failure to pay dues and failure to comply with the rules for Mandatory Continuing Legal Education. Furthermore, by failing to cooperate with these disciplinary proceedings, Respondent has shown a flagrant disregard for his obligations as an attorney and disrespect for his clients and the Court. His actions demonstrate a clear indifference as to whether he maintains his ability to practice law in Oklahoma and reflect his inability to do so in a manner consistent with the standards of the Bar.

VII. Discipline

Â¶25 Our goals in bar disciplinary matters are to protect the interests of the public and preserve the integrity of the legal profession, not to punish attorneys. Kinsey, 2009 OK 31, Â¶ 15, 212 P.3d at 1192. With these goals in mind, we must weigh all relevant factors including those that justify severe sanctions and those that would mitigate the severity of discipline. State ex rel. Okla. Bar Ass'n v. Stewart, 2003 OK 13, Â¶ 19, 71 P.3d 1, 4. We must also weigh the deterrent effect of our discipline on the Respondent and the Oklahoma Bar. State ex rel. Okla. Bar Ass'n v. Taylor, 2003 OK 56, Â¶ 22, 71 P.3d 18, 29.

Â¶26 Respondent's misconduct is unique, but we have had occasion to consider similar cases in the past. In State ex rel. Oklahoma Bar Association v. Whitebrook, 2010 OK 72, 242 P.3d 517, the respondent was retained by two separate clients to handle probates. In both instances, the respondent failed to diligently pursue resolution of the cases, failed to communicate with the clients, and failed to return unearned portions of their retainers. Id. Â¶Â¶ 4-6, 242 P.3d at 519. When the clients filed grievances, the respondent failed to respond to the Bar's requests for information. Id. Â¶Â¶ 7-8, 242 P.3d at 519-20. He complied with a subpoena to appear for an investigative deposition following the first grievance but failed to comply with another subpoena issued after the second grievance. Id. Â¶Â¶ 7-9, 242 P.3d at 519-20. We found that the respondent's misconduct warranted a suspension of two years and one day. Id. Â¶ 26, 242 P.3d at 523.

Â¶27 In State ex rel. Oklahoma Bar Association v. McCoy, 2010 OK 67, 240 P.3d 675, the respondent faced numerous counts of misconduct alleging, among other things, that he failed to diligently pursue cases on behalf of several clients, failed to communicate with them regarding the status of their cases, and failed to return thousands of dollars in unearned fees. The respondent also admitted that he failed to respond to some of the clients' grievances and provided misleading and inadequate responses to others. Id. Â¶Â¶ 23-24, 240 P.3d at 684. The respondent submitted evidence in mitigation that he and members of his immediate family struggled with various mental and physical ailments, which inhibited his ability to practice law effectively. Id. Â¶Â¶ 25-32, 240 P.3d at 684-86. We suspended his license to practice for two years and one day. Id. Â¶ 44, 240 P.3d at 690.

Â¶28 In State ex rel. Oklahoma Bar Association v. Rowe, 2012 OK 88, 288 P.3d 535, the respondent faced numerous counts of misconduct alleging, among other things, that she deposited clients' retainers into her operating account, failed to diligently pursue resolution of their cases, failed to communicate with them, and failed to turn over client property when requested. The respondent failed to provide responses to several of the grievances and failed to produce bank records requested by the Bar. Id. Â¶Â¶ 4, 6, 11, 13, 16-17, 288 P.3d at 537-39. We found that the respondent's conduct warranted disbarment. Id. Â¶ 31, 288 P.3d at 542.

Â¶29 These precedents make clear that only two forms of discipline would be appropriate in light of Respondent's misconduct, suspension for two years and one day or disbarment. While the conduct of the respondents in Whitebrook and McCoy is no less reprehensible than Respondent's, both of those individuals at least made modest overtures of cooperation with the disciplinary proceedings. Respondent on the other hand has demonstrated no interest whatsoever in maintaining his law license. He has consistently and consciously chosen not to participate in these proceedings or recognize the authority of the Court. Given his indifference and the seriousness of his misconduct, we find that disbarment is the only appropriate discipline.

VIII. Assessment of Costs

Â¶30 On September 10, 2021, Complainant filed an application to assess the costs of the disciplinary proceedings, totaling $1,488.03, to Respondent. Respondent did not file an objection to the application. Rule 6.16, RGDP, provides that in disciplinary proceedings where discipline results, "the cost of the investigation, the record, and disciplinary proceedings shall be surcharged against the disciplined lawyer unless remitted in whole or in part by the Supreme Court for good cause shown." Respondent is hereby ordered to pay costs in the amount of $1,488.03 within ninety days of the effective date of this opinion.

RESPONDENT DISBARRED AND ORDERED TO PAY COSTS

Winchester, Edmondson, Combs, Gurich, Rowe, Kuehn, JJ., concur.

Kane, V.C.J., with whom Darby, C.J., and Kauger, J., join, concurring in part and dissenting in part:

Â¶1 I would suspend Respondent's license for two years and one day.

FOOTNOTES

[1] Rule 6.7, RGDP, states in full:

The Chief Master or Vice-Chief Master of the Professional Responsibility Tribunal shall notify the respondent and the General Counsel of the appointment and membership of the Trial Panel and of the time and place for hearing, which shall not be less than thirty (30) nor more than sixty (60) days from the date of appointment of the Trial Panel. Extensions of this period may be granted by the Chief Master (or the Vice-Chief Master, in case of the unavailability of the Chief Master) for good cause shown.

[2] Complainant submitted records from two IOLTA accounts registered to Respondent's firm, Oklahoma Progress, PLLC. The bank records reflect that the first account has had a zero balance since approximately September 1, 2012, and the second account has had a zero balance since approximately February 1, 2013. Neither account reflects a deposit that would correspond with Tierney's retainer.

[3] As was the case with respect to Count I, neither of Respondent's trust accounts reflect a deposit that might correspond with the deposit of Harper's retainer.

At or around this time, Harper also paid Respondent $2,500.00 to join a medical marijuana trade association he had established as part of his work as a lobbyist. These funds were not intended to be used as compensation for legal services.

[4] Rule 1.3, ORPC, provides, "A lawyer shall act with reasonable diligence and promptness in representing a client."

[5] Rule 1.4, ORPC, provides:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter;
(4) promptly comply with reasonable requests for information; and
(5) consult with the client about any relevant information on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[6] The full text of Rule 1.15(d) is as follows:

Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

[7] Rule 8.1(b), ORPC, states:

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

....

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

[8] Rule 5.2, RGDP, provides:

After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action.

[9] Rule 8.4(a), ORPC, provides:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

....

[10] Rule 1.3, RGDP, provides:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

Â