OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WILLIS

 

 
 

 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WILLIS
2022 OK 15
Case Number: SCBD-6925
Decided: 02/08/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 15, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

Â 

Â 

STATE OF OKLAHOMA ex rel., OKLAHOMA BAR ASSOCIATION Complainant,
v.
HASKELL DOAK WILLIS, Respondent.

ORIGINAL PROCEEDING FOR ATTORNEY DISCIPLINE

Â¶0 Complainant, State of Oklahoma ex rel. Oklahoma Bar Association (OBA) initiated disciplinary proceedings against Respondent, Haskell Doak Willis, based on the following: (1) Respondent's criminal conviction and sentence for violating 18 U.S.C. Â§ 922(g); (2) four client grievances filed against Respondent; and (3) Respondent's failure to maintain an IOLTA account. This Court issued an Order of Immediate Interim Suspension. The Professional Responsibility Tribunal (PRT) held a hearing and issued a report unanimously recommending disbarment. We hold there is clear and convincing evidence that Respondent's conduct requires disbarment. We order Respondent to pay costs within ninety days from the filing date of this opinion.

RESPONDENT DISBARRED; RESPONDENT ORDERED TO PAY COSTS WITHIN NINETY DAYS FROM FILING DATE OF THIS OPINION

Tracy Pierce Nester, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Gurich, J. 

Â¶1 The OBA initiated this disciplinary proceeding on May 21, 2020, under Rule 6 and 6.2A of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2011 ch. 1, app. 1-A. We consolidated this proceeding with No. 6945, which the OBA brought in accordance with Rule 7.2, RGDP. The OBA's allegations stem from Respondent's criminal conduct, client neglect, and misuse of client funds. The OBA alleges Respondent's actions violate the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2011 ch. 1, app. 3-A, and the RGDP and warrant professional discipline. After disciplinary proceedings originally commenced, Respondent was suspended from the Roll of Attorneys on September 14, 2020, for failure to pay dues. On June 7, 2021, Respondent was again suspended for failure to comply with the 2020 Mandatory Continuing Legal Education (MCLE) requirements. Because Respondent did not pay his late dues and fees by September 14, 2021, our Court struck his name from the Roll of Attorneys in October 2021.[1]

Â 

Facts & Procedural History

Â 

Â¶2 Respondent, Haskell Doak Willis, was admitted to practice on October 19, 1979. In November 2019, a grand jury filed an indictment against Respondent in the United States District Court for the Eastern District of Oklahoma. Respondent continued practicing law. In December 2019, a client filed a grievance in the General Counsel's office of the OBA, claiming Respondent began a cycle of cancelling and rescheduling meetings, avoiding communication, and requesting more funding but failing to move the case forward. In early 2020, three clients filed similar grievances, claiming that after receiving payment, they could not communicate with Respondent, he failed to work on their cases, and he forced them to obtain other counsel. Respondent responded only to the first grievance. The OBA opened each matter for formal investigation.

Â¶3 On May 21, 2020, the OBA filed a verified complaint and application for emergency interim suspension against Respondent under RGDP Rules 6 and 6.2A. The OBA supported the original verified complaint with findings from its formal investigation of a client grievance. The verified complaint was later amended to include three additional client grievances and the failure to maintain an interest on lawyer trust account (IOLTA). The OBA based its request to this Court for an emergency interim suspension with the following: (1) a plea agreement filed in federal court, in which Respondent agreed to voluntarily plead guilty to Felon in Possession of a Firearm, a violation of 18 U.S.C. Â§ 922(g); (2) notice of four client grievances against Respondent; (3) Respondent's unresponsiveness to clients and the OBA; and (4) failure to maintain an IOLTA account. This Court ordered Respondent to show cause within twenty days why it should not enter an Order of Interim Suspension. Receiving no response, an order suspending Respondent was entered on June 8, 2020.

Â¶4 Respondent executed a plea agreement on the federal firearm charge in February 2020. The federal district court filed judgment on June 24, 2020, and sentenced Respondent to imprisonment for twelve months and one day, followed by three years of supervised release.[2] On July 8, 2020, the OBA initiated a Rule 7 disciplinary proceeding by furnishing the Court with a Notice of Criminal Conviction and Sentence. Respondent's imprisonment spanned from June 30, 2020, to April 9, 2021.

Â¶5 As part of the plea agreement, Respondent agreed to contact the OBA and resign his "active member" status. Respondent failed to timely contact the OBA and resign. The OBA contacted Respondent by phone on March 17, 2020, regarding his conviction and forthcoming disciplinary proceedings. During that phone call, Respondent told the OBA he had no intention to resign. In August of 2020, Respondent twice attempted to resign without satisfying resignation prerequisites in RGDP Rule 8.1.[3] After the first attempt, the OBA informed Respondent's counsel in the criminal matter that the resignation was ineffective because it did not satisfy RGDP Rule 8.1. Further, the OBA sent a proposed affidavit of resignation for Respondent's review and notarized signature. The OBA moved to stay the proceedings pending Respondent's anticipated resignation, which the PRT granted. Respondent failed to file a proper resignation, and the OBA made three additional attempts to obtain it, without avail.[4]

Â¶6 During the OBA's conversation with Respondent on March 17, 2020, Respondent verified that he would accept mail at his official roster address--400 S. Muskogee Avenue, Tahlequah, Oklahoma 74464--where he rented office space. But the record shows that Respondent had moved out of that space by March 7, 2020, leaving no forwarding address. The OBA sent correspondence to Respondent's official roster address and his last known residence--which, depending on the date, was either his home or prison. By letter dated April 2, 2020, but postmarked August 20, 2020, Respondent requested that all mail be sent to his home address--712 W. Shawnee Street, Tahlequah, Oklahoma 74464. With the exception of two instances, the OBA honored Respondent's request after receiving it on August 24, 2020.[5] The OBA also attempted contact by e-mail and phone.

Â¶7 Respondent has been uncooperative and unresponsive. After his initial arrest and release on bond, Respondent failed to follow two pretrial release conditions: (1) to allow a pretrial release officer to visit him at home or elsewhere; and (2) to report to the pretrial service office as directed. Respondent was arrested again, detained nearly a month, and then sentenced to home detention with an ankle monitor. Respondent has not responded to any request or filing by the OBA, the PRT, or this Court since disciplinary proceedings began.[6] Notably, Respondent did not respond to the OBA's motion to deem allegations admitted. The motion was sustained pursuant to RGDP Rule 6.4 at the hearing held July 13, 2021 which Respondent failed to attend.[7]

Â 

Standard of Review

Â 

Â¶8 The Supreme Court has exclusive original jurisdiction over attorney disciplinary proceedings. RGDP Rule 1.1; State ex rel. Okla. Bar Ass'n v. Holden, 1995 OK 25, Â¶ 10, 895 P.2d 707, 711. We review the PRT proceedings de novo, testing the record for clear and convincing evidence. RGDP Rule 6.12(c); State ex rel. Okla. Bar Ass'n v. Kinsey, 2009 OK 31, Â¶ 12, 212 P.3d 1186, 1192. We impose discipline for protection of the public interest and integrity of the legal profession. Id. Â¶ 15, 212 P.3d at 1192. To determine severity of discipline, we consider the attorney's entire professional record and the Court's precedent regarding similar misconduct. Id., Â¶ 16, 212 P.3d at 1192 (internal citations omitted). The extent of discipline, however, remains a case-by-case inquiry. Id.

Analysis

Rule 6

Â¶9 Under his plea agreement, Respondent was required to "contact the Oklahoma Bar Association . . . and withdraw his status as an active member." Respondent did not attempt to resign until his imprisonment began, months after he executed the plea agreement. In the meantime, Respondent exploited his clients' trust and resources.

Maupin Grievance

Â¶10 Jackie Maupin's father retained Respondent in 2014 for pending matters surrounding eviction of Maupin's brothers, Bryan and Ronnie Osburn. Maupin's father died in 2017, and Maupin assumed handling these matters. Maupin continued with Respondent, although she claimed he had accomplished little. Maupin filed a grievance with the OBA in December 2019, claiming that Respondent had (1) failed to move the case along, yet demanded fees on multiple occasions "to finish the case"; (2) failed to communicate, and avoided contact with Maupin; (3) failed to provide an accounting upon Maupin's request; and (4) failed to return Maupin's case file after she retained other counsel. Maupin also claimed that she sent Respondent a letter requesting a refund, which Respondent obtained but never opened.[8] The OBA forwarded Maupin's grievance to Respondent. Respondent timely provided a written response.

Â¶11 Regarding this grievance, we agree with the PRT that the OBA failed to establish by clear and convincing evidence that Respondent violated ORPC Rules 1.1, 1.3, 1.4, or 8.1(b). Rule 1.1 requires attorneys to provide competent representation.[9] Rule 1.3 requires attorneys to "act with reasonable diligence and promptness" in that representation.[10] In response to the grievance, Respondent indicated that one of Maupin's matters sat dormant for over a year before he was retained, but thereafter he began work immediately. Respondent then listed the procedural history of the case since he entered his appearance. That account, verified by court records, shows that Respondent was active in the case from the time he was retained. No clear and convincing evidence shows any delays attributable to a lack of competence or diligence by Respondent. Rule 1.4 requires an attorney to keep reasonable communication with a client.[11] Maupin said Respondent avoided communication with her, but Respondent said his secretary kept Maupin updated. Updating a client satisfies only part of an attorney's communicative responsibility. See ORPC Rule 1.4(a) (3). Although Respondent failed to address Maupin's allegation that he avoided her, the record does not prove a violation of Rule 1.4(a) (4) by clear and convincing evidence. ORPC Rule 8.1(b) bars attorneys from "knowingly fail[ing] to respond to a lawful demand for information from an admissions or disciplinary authority."[12] Respondent did not violate Rule 8.1(b)[13] with respect to this grievance because upon its filing, Respondent provided a written response as the OBA requested. The OBA did not demand further information. The PRT did not address ORPC Rule 1.16(d), despite Maupin's grievance alleging Respondent failed to return the case file. Respondent claimed that he directed his secretary to return Maupin's case file to her--and that she did so.[14] Maupin disagreed. Regardless, the OBA has not presented clear and convincing evidence to support a Rule 1.16(d) violation.

Â¶12 Although the OBA did not raise ORPC Rule 1.15(d) in its verified complaint, it described Respondent's conduct in violation thereof. Maupin included Respondent's failure to provide an accounting in her grievance and testified regarding the same at the PRT hearing. In response to the grievance, Respondent did not address his failure to provide an accounting. Rule 1.15(d) requires attorneys to "promptly render a full accounting" of "funds or other property that the client or third person is entitled to receive" when requested "by the client or third person."[15] After Maupin's request, Respondent was obliged to provide Maupin with an account of how the retainer was used. No accounting was ever provided and we find that Respondent violated Rule 1.15(d).

Wood & Sampayo Grievances

Â¶13 In December 2019, while under federal indictment, Respondent agreed to defend Austin Wood against a DUI charge. Wood's grandmother paid a retainer of one thousand dollars. Respondent filed an entry of appearance and appeared in Court on behalf of Wood in December of 2019 and in January of 2020. Soon after, Respondent broke off communication with Wood and failed to attend subsequent hearings in February of 2020.[16] Wood then obtained other representation.[17]

Â¶14 In January 2020, Respondent assumed representation of Wood's sister, Amanda Sampayo, for collection of past-due child support. Sampayo's grandmother paid a $1,500 retainer, but Respondent never filed anything on Sampayo's behalf. Further, after nearly a month and half into the representation, Sampayo's ex-husband moved to modify the terms of custody. Despite Sampayo and her grandmother's best efforts, they could not contact Respondent.[18] Thereafter, Sampayo retained other representation.

Â¶15 In utter disregard for his clients' best interests, Respondent moved out of his law office without notifying Sampayo, Woods, or their grandmother. Sampayo and Woods were forced to find new representation without the benefit of the original documents given to Respondent.[19] Grievances were filed in March, and Respondent did not respond. With respect to both matters, the PRT found Respondent's conduct violated ORPC Rules 1.3, 1.4, and 3.2.[20] With respect to the Sampayo matter, the PRT found Respondent also violated ORPC Rule 1.1 and RGDP Rule 5.2. We agree the conduct of the Respondent serves as the basis for the imposition of discipline.

Hayes Grievance

Â¶16 In January of 2020, Respondent agreed to represent Michael Hayes in divorce proceedings and entered an appearance. Respondent collected a $1,500 retainer, yet failed to undertake any legal work on Hayes' behalf. When Respondent quickly became unreachable, Hayes acquired other representation. Hayes was able to contact Respondent once in March, and during the conversation, Respondent agreed to refund Hayes' retainer. Respondent never followed through with the refund. When Hayes filed a grievance in March, Respondent failed to answer. With respect to this matter, the PRT found Respondent's conduct violated ORPC Rules 1.3, 1.4, and 3. We agree that the record contains clear and convincing evidence to support the findings of the PRT.

IOLTA Account

Â¶17 For four years, Respondent did not deposit clients' advance fee retainers into a client designated trust account, as required by ORPC Rule 1.15(a) and (c).[21] Respondent originally opened an attorney trust account in March 2004. The OBA verified that this account was closed in March of 2016. The degree of culpability associated with mishandling client funds depends on whether the offense amounts to (1) commingling, (2) simple conversion, or (3) misappropriation. State ex rel. Okla. Bar Ass'n v. Drummond, 2017 OK 24, Â¶ 24, 393 P.3d 207, 216 (quoting State ex rel. Okla. Bar Ass'n v. Mansfield, 2015 OK 22, Â¶ 18, 350 P.3d 108, 115). Commingling occurs "when client monies are combined with the attorney's personal funds." Mansfield, 2015 OK 22, Â¶ 18, 350 P.3d at 115. Simple conversion requires misapplication of such funds. Id., 350 P.3d at 115. Misappropriation requires purposeful deprivation of funds "through deceit and fraud." Id., 350 P.3d at 115.

Â¶18 The record illustrates that Respondent at least commingled funds because he did not deposit his clients' advance fee retainers in an IOLTA account after March 2016. A lawyer is required to "hold an advance fee retainer in a segregated account until the fee is earned." State ex rel. Okla. Bar Ass'n v. Downes, 2005 OK 33, Â¶ 36, 121 P.3d 1058, 1067 (internal citation omitted); ORPC Rule 1.15(a). Such funds may be withdrawn "only as fees are earned or expenses incurred." ORPC Rule 1.15(c). We have previously indicated that "we will not tolerate attorneys who fail to keep client money and property safeguarded in a trust account, completely severed from the lawyer's operating account." Drummond, 2017 OK 24, Â¶ 24, 393 P.3d at 216.

Â¶19 Although, the OBA did not reference ORPC Rule 1.16(d) in its verified complaint, we find Respondent's failure to refund any unearned retainers violates this rule. Rule 1.16(d) requires a terminated lawyer to surrender any "property to which the client is entitled and refund any advance payment of fee or expenses that has not been earned or incurred."[22] Except with respect to the Maupin matters, Respondent failed to adequately pursue resolution of the aforementioned cases, and has not returned these sums.

Failure to Respond

Â¶20 Respondent has not responded to any request or filing by the OBA, the PRT, or this Court during disciplinary proceedings. During a phone conversation in March of 2020, between the OBA and Respondent, the OBA requested a comprehensive case list regarding the status of Respondent's pending cases. Respondent never provided that list. With each client grievance filed, the OBA gave Respondent two weeks to provide a written response, and to include copies of documents or others' statements relevant to the grievance. Further, the OBA warned Respondent that failure to cooperate is grounds for discipline. Respondent responded to one of the OBA's four demands. Subsequently, the OBA sent Respondent messages by email and phone to discuss the matters and obtain information, but Respondent did not respond. Under RGDP Rule 5.2, Respondent was required to respond in writing "within twenty (20) days after service of the grievance."[23] Failure to timely respond is "grounds for discipline." RGDP Rule 5.2; see State ex rel. Okla. Bar Ass'n v. Simank, 2001 OK 13, Â¶Â¶ 17-19, 52 P.3d 1003 (public reprimand).

Â¶21 In addition to Respondent's failure to cooperate with the OBA, Respondent failed to cooperate with the PRT and this Court during disciplinary proceedings. Respondent never filed a pleading responsive to the allegations in the OBA's original or amended complaint as required under RGDP Rule 6.4.[24] Further, in the Order of Immediate Interim Suspension, this Court directed Respondent to comply with RGDP Rule 9.1.[25] The Court has not received an affidavit of compliance, list of notified clients, and list of other State and Federal courts and administrative agencies before which Respondent is admitted to practice, as required by RGDP Rule 9.1. Likewise, there is nothing in the record indicating Respondent's compliance. We note that the OBA also demanded a list indicating all legal matters in which Respondent was currently involved as counsel, and Respondent did not respond. Respondent's failure to follow pretrial-release conditions and failure to pay the OBA 2020 dues after this Court instructed payment be made, further indicates his disregard for court orders. We find Respondent's unresponsiveness violates RGDP Rules 5.2 and 9.1 and ORPC 8.1(b)[26] by clear and convincing evidence and is indicative of Respondent's disregard for this Court's authority.

Rule 7

Regarding the Rule 7 matter, the Court must draw two conclusions: (1) whether Respondent's criminal conviction "demonstrate[s] unfitness to practice law, and if so, (2) the appropriate level of discipline based on all facts and circumstances." State ex rel. Okla. Bar Ass'n v. Hart, 2014 OK 96, Â¶ 8, 339 P.3d 895, 898 (citing State ex rel. Okla. Bar Ass'n v. Cooley, 2013 OK 42, Â¶ 2, 304 P.3d 453, 454). In August 2019, federal authorities executed a valid search warrant at Respondent's home in Tahlequah, Oklahoma. The authorities found Respondent in possession of twenty-four firearms. Because of Respondent's prior felony conviction of Obtaining Controlled Substances by Misrepresentation, his firearm possession violated 18 U.S.C. Â§Â§ 922(g) (1)[27] and 924(a) (2).[28] Authorities also found two Schedule I controlled substances, marijuana and mushrooms, and a Schedule II controlled substance, Methamphetamine. The November 2019 indictment charged Respondent with violating 21 U.S.C. Â§ 844(a) by possessing Methamphetamine and 18 U.S.C. Â§ 922(g) (1) and 924(a) (2) by possessing firearms as a felon. In February 2020, Respondent executed a plea agreement, whereby he pleaded guilty to the Â§ 922(g) charge and the federal government agreed not to prosecute his Â§ 844(a) offense. Respondent was sentenced to imprisonment for twelve months and one day, followed by three years' supervised release.

Â¶22 This Court views "entering a plea of guilty . . . to a felony charge . . . as satisfactory evidence of professional misconduct." Hart, 2014 OK 96, Â¶ 11, 339 P.3d at 899 (citing State ex rel. Okla Bar Ass'n v. Conrady, 2012 OK 29, Â¶ 8, 275 P.3d 133, 136-37). The judgment of conviction and sentence on Respondent's guilty plea are "conclusive evidence of the commission of the crime . . . and shall suffice as the basis for discipline." RGDP Rule 7.2.

Â¶23 A criminal conviction itself does not establish unfitness to practice law; but, crimes which amount to professional misconduct under ORPC Rule 8.4 reflect on fitness to practice law. See Hart, 2014 OK 96, Â¶ 10, 339 P.3d at 899. A crime is professional misconduct when it "reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." ORPC Rule 8.4. Comment 2 clarifies that attorneys are "professionally answerable only for offenses that indicate a lack of those characteristics relevant to law practice," such as "[o]ffenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice."[29] The PRT found that the repetitive nature of Respondent's criminal conduct violated ORPC Rule 8.4.

Â¶24 We agree that Respondent's criminal conduct violated ORPC Rule 8.4. Although Respondent was not convicted for his possession of controlled substances, we also consider this conduct for disciplinary purposes. RGDP Rule 1.3 ("Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline."); State ex rel. Okla. Bar Ass'n v. Anderson, 2005 OK 9, Â¶ 20, 109 P.3d 326, 331 (disciplining attorney for sexual misconduct, though criminal charges were dismissed, and citing RGDP Rule 1.3). Because Respondent's first felony involved illegally obtaining controlled substances, his latest controlled-substance possession is a repeated offense further illustrating his disregard for the law. See State ex rel. Okla. Bar Ass'n v. Rogers, 2006 OK 54, Â¶ 18, 142 P.3d 428, 435 (disciplining attorney for "long term pattern of criminal misconduct," indicating indifference to legal obligation).

Â¶25 Respondent's criminal conduct also violated RGDP Rule 1.3: "commission . . . of any act contrary to prescribed standards of conduct . . . which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action." Because of Respondent's former position as a prosecutor,[30] his conviction garnished national attention, further besmirching the dignity of the legal profession.[31] We conclude Respondent's criminal conduct demonstrates unfitness.

Discipline

Â¶26 The second prong of the Rule 7 inquiry requires the Court to determine the appropriate level of discipline; we will do so in light of our Rule 6 conclusions. Without relevant context, Respondent's criminal offenses do not necessarily justify disbarment. Firearm possession standing alone does not involve "violence, dishonesty, breach of trust, or serious interference with the administration of justice," under ORPC Rule 8.4 Comment 2. With respect to substance-related discipline, "the range of discipline imposed . . . has been quite wide." State ex rel. Okla. Bar Ass'n v. Smith, 2011 OK 8, Â¶ 19, 246 P.3d 1090, 1096. Where the drug offense did not involve or affect attorney-client relations, we have imposed lesser discipline than disbarment. See State ex rel. Okla. Bar Ass'n v. Arnett, 1991 OK 44, 815 P.2d 170 (imposing ninety-day suspension and two-year probation to discipline an attorney who pleaded guilty to possession of a Schedule II controlled substance). However, we base the appropriate level of discipline "on all facts and circumstances." Hart, 2014 OK 96, Â¶ 8, 339 P.3d at 898 (internal citation omitted). Respondent's criminal conduct illustrates a pattern of misconduct, which diminishes his trustworthiness and demonstrates his disregard for the law. When viewed together with his unresponsiveness to clients, the OBA, the PRT, and this Court, and his non-cooperation with pretrial-release instructions and RGDP Rule 8.1 resignation requirements,[32] Respondent's conduct clearly demonstrates his unfitness to practice law and warrants disbarment.

Â¶27 We agree with the PRT that Respondent's conduct violated ORPC Rules 1.1, 1.3, 1.4, 1.15(a) and (c), 3.2; 8.4 and RGDP Rule 5.2. We also conclude Respondent violated ORPC Rules 8.1(b), 1.15(d), 1.16(d) and RGDP Rules 1.3, 6.4, and 9.1. Respondent chose to not provide mitigating evidence. The PRT and the OBA recommend disbarment. Without question, Respondent's conduct warrants disbarment.

Â¶28 We ordered disbarment in State ex rel. Oklahoma Bar Association v. Rowe, where respecting seven client matters, an attorney failed to exhibit sufficient competence and diligence, failed to keep clients reasonably informed, commingled client funds, refused to refund unearned retainers and client files, did not sufficiently respond to client grievances, failed to respond to several of the OBA's lawful demands for information, and failed to file an answer to the OBA's complaint. 2012 OK 88, Â¶ 22, 288 P.3d 535, 541. Likewise, in State ex rel. Oklahoma Bar Association v. Passmore, we disbarred an attorney who avoided contact with his clients, did not respond to grievances filed by those clients, failed to appear at a deposition and the PRT hearing, and refused to return client files. 2011 OK 90, Â¶Â¶ 1-2, 16, 264 P.3d 1238, 1239, 1243. In State ex rel. Oklahoma Bar Association v. Sweet, we found "no basis for a sanction less than disbarment" for an attorney who pleaded guilty to two felonies involving dishonesty and breach of trust; failed to comply with MCLE requirements, resulting in her name being stricken from the Roll of Attorneys; engaged in unauthorized practice of law; failed to respond to client grievances; neglected to file a pleading responsive to the OBA's complaint; and disregarded this Court's orders. 2021 OK 57, Â¶ 13, 499 P.3d 748, 751.

Â¶29 In the present matter, Respondent's actions inflicted significant embarrassment upon the legal profession. Respondent's cumulative misconduct clearly warrants disbarment. The OBA filed an Application to Assess Costs against Respondent, seeking reimbursement of $1,623.75 under RGDP Rule 6.16.[33] Respondent did not object or otherwise show good cause for remittance by the Court. The OBA's application is granted. Respondent is ordered to pay $1,623.75 within ninety days from the filing date of this Opinion.

RESPONDENT DISBARRED; RESPONDENT ORDERED TO PAY COSTS 
WITHIN NINETY DAYS FROM FILING DATE OF THIS OPINION

CONCUR: DARBY, C.J., KANE, V.C.J., KAUGER, WINCHESTER, COMBS, GURICH, ROWE, AND KUEHN, JJ.;

NOT PARTICIPATING: EDMONDSON, J.

FOOTNOTES

[1] According to the Director of Administration for the Oklahoma Bar Association, Respondent owed $1,550 in dues and fees. The OBA's MCLE Administrator indicated that Respondent owed $700: $500 for reinstatement and $200 for late fees. The OBA's MCLE Administrator testified Respondent lacked 10.5 general CLE credits as of June 10, 2021.

[2] United States v. Haskell Doak Willis, CR-19-00089-001-RAW.

[3] Respondent mailed the OBA two letters, the first dated August 2nd but postmarked August 20, 2020, and the second, dated August 3rd but postmarked August 24, 2020. The OBA made four attempts to obtain Respondent's resignation.

The OBA received Respondent's first letter August 24th, and on August 25th e-mailed Respondent's counsel in the criminal matter:

Per our recent conversation, enclosed is a proposed Affidavit Regarding Resignation Pending Disciplinary Proceedings for Doak Willis' consideration. If this Affidavit meets with his approval, please have him sign before a notary at the prison and return it to me. I will then file the necessary application with the Supreme Court.

The OBA received Respondent's second letter August 27th, and on October 20th mailed to Respondent at the correctional facility a letter indicating that his counsel asked the OBA to contact Respondent directly to obtain his formal resignation. The OBA included a proposed affidavit and notified Respondent, "this process is necessary in order to resign; a letter from you will not suffice." The OBA requested Respondent to write back should he have questions about the resignation process or concerns regarding the proposed language in the affidavit.

Receiving no response, the OBA mailed Respondent April 27, 2021--this time, to his official roster address and not the prison since Respondent was released early on April 9, 2021. The letter was returned undeliverable. On May 11, 2021, the OBA forwarded to Respondent's home address the April 27 letter, along with another proposed affidavit and a warning that if Respondent did not contact the OBA before June 1, 2021, the OBA would "proceed with setting a disciplinary hearing." Respondent did not respond.

[4] The record shows that the OBA gave Respondent notice that resignation is governed by RGDP Rule 8.1. Additionally, the OBA provided Respondent with the opportunity to discuss questions regarding the process or objections to language used in the OBA's proposed Affidavit Regarding Resignation Pending Disciplinary Proceedings.

[5] The record indicates two instances where the OBA mailed correspondence elsewhere: (1) an October 20, 2020 letter regarding Respondent's attempted resignation, which the OBA mailed to the correctional facility where Respondent was imprisoned; (2) an April 27, 2021 letter regarding Respondent's attempted resignation, which the OBA mailed to Respondent's roster address. The OBA's decision to mail Respondent at his prison address was based on the fact that Respondent was in prison and he had closed his office (roster address) Mail sent to his roster address was returned unable to forward. The OBA forwarded the April 27 letter to his home address.

[6] We note that Respondent received sufficient notice of these disciplinary proceedings. RGDP Rule 6.3 requires notice "of the filing of a formal complaint . . . by certified mail to the respondent's last known address." The OBA filed a proof of service, indicating Respondent was personally served on May 10, 2020, at his home address--712 W. Shawnee Street, Tahlequah, OK 74464--with the Verified Complaint and Application for Emergency Interim Suspension, the Entry of Appearance by counsel for BOA, and the Order to Show Cause.

[7] We further note that Respondent received sufficient notice of the PRT hearing. Under RGDP Rule 6.7, the Chief Master of the Professional Responsibility Tribunal must notify the respondent of the time and place for hearing. Unlike notice of disciplinary proceedings, notice of the PRT hearing is not required to be accomplished by certified mail. Nonetheless, the OBA sent notice by certified mail to Respondent's home address and official roster address.

[8] The letter was returned undeliverable, but Maupin claimed Respondent contacted her after receiving it.

[9] ORPC Rule 1.1 provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

[10] ORPC Rule 1.3 provides:

A lawyer shall act with reasonable diligence and promptness in representing a client.

[11] ORPC Rule 1.4 provides:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[12] ORPC Rule 8.1 provides:

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

[13] ORPC Rule 8.1(b) provides:

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

[* * *]

(b) . . . knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

[14] Although, Maupin and Respondent disagreed about what constitutes the case file. Respondent claimed he returned Maupin's file. Maupin claimed that Respondent only returned her original documents--nothing Respondent had drafted. Additionally, Maupin claimed that Respondent delayed returning her file by claiming it was at his home, not the office.

[15] ORPC 1.15(d) provides:

Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

[16] The record shows that Respondent did not attend one of the two February hearings he missed because he failed to cooperate with pretrial release requirements, causing his detainment from January 24, 2020, to February 18, 2020. At no time did Respondent notify Wood that he would not appear. After Respondent missed the first hearing, Wood tried to inform Respondent of his subsequent court date by phone and in person by visiting Respondent's office, but Respondent was unavailable.

[17] We note that each client obtained other representation before we filed the Order of Immediate Interim Suspension directing Respondent to inform his clients of his inability to represent them and withdraw representation.

[18] Sampayo and her grandmother intended to notify Respondent of the motion to modify so that Respondent could address it.

[19] In their grievances, Sampayo and Woods raised Respondent's failure to return their case files; however, the OBA did not raise an ORPC Rule 1.16(d) violation in its complaint, and the PRT did not make a finding or recommendation regarding such a violation. Further, Respondent has not provided a response, as Respondent did respecting the Maupin grievance. Therefore, the evidence is insufficient to establish a Rule 1.16(d) violation by clear and convincing evidence with respect to the Sampayo and Woods matters.

[20] ORPC Rule 3.2 provides:

A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

[21] ORPC Rule 1.15(a) and (c) provide:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

[* * *]

(c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

[22] ORPC Rule 1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expenses that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[23] RGDP Rule 5.2 provides:

After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete' or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action.

[24] RGDP Rule 6.4 provides:

The respondent shall within twenty (20) days after the mailing of the complaint file an answer with the Chief Justice. The respondent may not challenge the complaint by demurrer or motion. In the event the respondent fails to answer, the charges shall be deemed admitted, except that evidence shall be submitted for the purpose of determining the discipline to be imposed.

[25] RGDP Rule 9.1 provides:

When the action of the Supreme Court becomes final, a lawyer who is disbarred or suspended, or who has resigned membership pending disciplinary proceedings, must notify all of the lawyer's clients having legal business then pending within twenty (20) days, by certified mail, of the lawyer's inability to represent them and the necessity for promptly retaining new counsel. If such lawyer is a member of, or associated with, a law firm or professional corporation, such notice shall be given to all clients of the firm or professional corporation, which have legal business then pending with respect to which the disbarred, suspended or resigned lawyer had substantial responsibility. The lawyer shall also file a formal withdrawal as counsel in all cases pending in any tribunal. The lawyer must file, within twenty (20) days, an affidavit with the Commission and with the Clerk of the Supreme Court stating that the lawyer has complied with the provisions of this Rule, together with a list of the clients so notified and a list of all other State and Federal courts and administrative agencies before which the lawyer is admitted to practice. Proof of substantial compliance by the lawyer with this Rule 9.1 shall be a condition precedent to any petition for reinstatement.

[26] We recognize that Respondent's failure to withdraw is also a violation of ORPC 1.16(a)(1). Nonetheless, we will not impose discipline for this infraction because the OBA did not raise it in the complaint, meaning Respondent did not have sufficient notice of the allegation. State ex rel. Okla. Bar Ass'n v. Bolusky, 2001 OK 26, Â¶ 8, 23 P.3d 268, 273.

[27] 18 U.S.C. Â§ 922(g)(1) provides:

(g) It shall be unlawful for any person--

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

[* * *]

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

[28] 18 U.S.C. Â§ 924(a)(2) provides:

Whoever knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both.

[29] ORPC Rule 8.4 cmt. 2; Additionally, Comment 2 specifies that "[a] pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation." Id.

[30] Respondent had transitioned into private practice from his 2-year role as Assistant District Attorney for District 27 in Tahlequah, Oklahoma (1986-1988).

[31] Reports surfaced from the following sources: (1) the Department of Justice; (2) U.S. Law Week by Bloomberg Law; and (3) local news services, including Tahlequah Daily Press and the Muskogee Phoenix.

[32] RGDP Rule 8.1 provides:

A lawyer who is the subject of an investigation into, or a pending proceeding involving, allegations of misconduct may resign membership in the Oklahoma Bar Association, and thereby relinquish the right to practice law, only by delivering to the Commission an affidavit stating that the lawyer desires to resign and that:

(a) The resignation is freely and voluntarily rendered, the lawyer is not being subjected to coercion or duress, and the lawyer is fully aware of the consequences of submitting the resignation;

(b) The lawyer is aware that there is presently pending an investigation into, or proceedings involving, allegations that there exist grounds for discipline, specifying particularly the misconduct alleged;

The lawyer agrees that he may be reinstated only upon full compliance with the conditions and procedures prescribed by these Rules, and no application for reinstatement may be filed prior to the lapse of five years from the effective date of the resignation.

[33] RGDP Rule 6.16 provides:

The costs of investigation, the record, and disciplinary proceedings shall be advanced by the Oklahoma Bar Association (or the Professional Responsibility Commission, if provision therefor has been made in its budget). Where discipline results, the cost of the investigation, the record, and disciplinary proceedings shall be surcharged against the disciplined lawyer unless remitted in whole or in part by the Supreme Court for good cause shown. Failure of the disciplined lawyer to pay such costs within ninety (90) days after the Supreme Court's order becomes effective shall result in automatic suspension from the practice of law until further order of the Court.

Â